IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Charles W. Penland, Sr., )
    Plaintiff, )
)
v. ) 1:08cv1263 (LO/TCB)
)
Bureau of Prisons, et al., )
    Defendants. )

## MEMORANDUM OPINION

Charles W. Penland, Sr., a federal inmate proceeding pro se, filed this civil rights action, pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). By Order dated March 9, 2009, plaintiff's claims against the Bureau of Prisons, Patricia R. Stansberry, and Medical Director Ong were dismissed. The remaining defendant, Dr. Suhasini N. Shah, was directed to file an answer or other responsive pleading within sixty days of the date of service. On May 5, 2009, Dr. Shah filed a Motion for Summary Judgment, a Memorandum in Support of the Motion, and a Notice pursuant to Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

On May 14, 2009, plaintiff filed two motions seeking preliminary injunctive relief, which he captioned as (1) a Rule 65 Emergency Motion and (2) a Motion for Emergency Injunction to Provide Relief from Continuing Malice and Medical Indifference. Plaintiff's Motions were denied on May 19, 2009, and Exhibit 2 of defendant's Motion for Summary Judgment was sealed by Order dated May 26, 2009. Plaintiff appealed this Court's denial of his Motions to the United States Court of Appeals for the Fourth Circuit, which affirmed the denial of his Motions. Penland v. Bureau of Prisons, et al., No. 09-7096 (4th Cir. Oct. 26, 2009). Plaintiff also filed a

Motion for Clarification, a Motion in Response to Defendant's Brief and Interrogatories, and three memoranda supporting plaintiff's claims against defendant Shah.

Plaintiff alleges that defendant Shah refused to treat plaintiff's many medical problems, including chronic sinusitis, in violation of the Eighth Amendment right to reasonable medical care. For the reasons below, plaintiff's Motions will be denied as moot and defendant's Motion for Summary Judgment will be granted.

## I. Plaintiff's Motions

Plaintiff has filed a Motion for Clarification, in which he asks the Court to "explain" several Orders. It is unclear what information plaintiff seeks, but after filing the Motion, plaintiff ably filed many more responsive documents in his case. Thus, the Motion will be denied as moot. Plaintiff has also filed a Motion in Response to Defendant's Briefs and Interrogatories, which appears to be another attempt to respond to defendant's Motion for Summary Judgment. As such, the substance of the Motion was considered when addressing the merits of plaintiff's case, and thus it will be denied as moot.

## II. Factual Background

Plaintiff, an inmate currently confined at the Federal Correctional Institution in Petersburg, Virginia ("FCI-Petersburg"),[1] is a chronic care patient with multiple health problems. Plaintiff alleges that Dr. Shah has refused to treat his conditions adequately, in violation of the Eighth Amendment. Am. Compl. 5. According to plaintiff, he is receiving "no care" at all and Dr. Shah refuses to see him, leaving him with "no doctor to visit." Am. Compl. 5, 6.[2]

---

[1] Previously, plaintiff was incarcerated at the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner"). He received medical treatment for some of his conditions there.

[2] Plaintiff has filed multiple written documents challenging defendant's versions of the facts. Contrary to the express instructions set forth in the defendant's notice pursuant to Local Rule 7(K) and the requirements of <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), plaintiff has

Specifically, plaintiff alleges that Shah has provided "no treatment" for plaintiff's "blinding headaches," neck injuries, shoulder injuries, hip injuries, chronic sinusitis, excessive tearing, and abdominal pain. Am. Compl. 5; Pl's Mot. in Resp. to Def.'s Br. and Interrogs. 3.

Plaintiff alleges that he has received no treatment for headaches and neck, shoulder, and hip injuries that he states were caused by a fall at FCI-Butner. Am. Compl. 5. According to plaintiff, Dr. Shah has "failed to even see [plaintiff] for his serious medical conditions." Id. Dr. Shah states that she examined plaintiff on February 13, 2008, when plaintiff complained of a headache that he has suffered ever since a fall, and that plaintiff was told to take Tylenol for his headache. Shah Aff. ¶ 9. During an examination on March 28, 2008, Dr. Shah noticed restricted movement in plaintiff's shoulder, even though he did not complain of shoulder pain at that time. Shah Aff. ¶ 11. Plaintiff told Shah that he was waiting to see an orthopedic surgeon. Shah Aff. ¶ 11. Exhibits show that plaintiff was also examined by another provider on October 29, 2008, because he complained of shoulder pain. Def. Mem. Supp. Summ. J. Ex. 2 at 10. Despite his current allegations of receiving "no treatment" for these conditions, plaintiff notes that he can "live with" the neck, shoulder, hip, and headache problems. Mem. Supp. Petr's Charge of Deliberate Indifference 4.

Additionally, plaintiff avers that he suffers from chronic sinusitis. According to plaintiff, his symptoms include fluid that constantly drains from his nose, requiring him to use between two and four rolls of tissue per day, making it difficult to breathe and eat, and rendering him a social pariah in the eating halls. Pl's Mot. in Resp. to Def.'s Br. and Interrogs. 10. Plaintiff believes that he needs surgery to correct this condition. Pl's Mot. in Resp. to Def.'s Br. and

---

failed to submit "affidavits (written statements signed before a notary public and under oath) or . . . sworn statements (bearing a certificate that it is signed under penalty of perjury)." (Docket # 12). Thus, plaintiff's filings were not properly sworn and carry no evidentiary value.

3

Interrogs. 4; Pl.'s Opp. to Def.'s Mot. for Summ. J. and Additions to Compl. 8. Plaintiff has been seen by medical providers, including Dr. Shah, several times complaining of excessive tearing and a runny nose. Def. Ex. 2 at 148, 153, 159. According to Dr. Shah, the reason plaintiff's nose runs constantly is because he previously had surgery to drain excessive tears through his nose, in order to prevent fluid from accumulating in his eyes. Shah Aff. ¶ 8. Plaintiff disputes this, stating: "Dr. Shah says that Penland has had an operation to drain fluid from his eyes through his nose. Penland's eyes are not draining at all. This is not true." Mem. Supp. Petr.'s Charge of Deliberate Indifference 5. However, plaintiff's medical records indicate that he has had at least three eye surgeries, including one while incarcerated. Def. Mem. Supp. Summ. J. Ex. 2 at 69, 72-73, 159. Plaintiff was examined by a specialist on March 28, 2008, who determined that more surgery to reduce the amount of fluid running from plaintiff's nose and eyes was not medically necessary and thus would not be approved by the Bureau of Prisons. Shah Aff. ¶ 12.

Plaintiff also states that he suffers from abdominal pain, swelling, and constipation; he believes he has a colon blockage or internal bleeding. Pl.'s Opp. to Def.'s Mot. for Summ. J. and Additions to Compl. 6-7; Pl.'s Mot. in Resp. to Def.'s Br. and Interrogs. 12. Plaintiff states that he has had "no scans" for these problems, though he admits that he did have a scan ordered by urologist while incarcerated at FCI-Bunter, and that a physician's assistant examined the scan in connection with colon issues. Pl's Opp. to Def.'s Mot. for Summ. J. and Additions to Compl. 9; Mem. Supp. Petr.'s Charge of Cruel and Unusual Punishment 2-3. Contrary to plaintiff's statements, Dr. Shah avers that she ordered an abdominal scan which turned up no cause of plaintiff's pain. Shah Aff. ¶ 40-41. Indeed, plaintiff's medical records reveal that on May 7, 2009, plaintiff's abdomen was scanned as a result of his complaint of pain and swelling and that a "nerve block" was recommended to help with the pain. Def.'s Mem. in Opp'n to Mot. for

Emergency Injunction Ex. 2 at 6. Plaintiff also admits that he was "recently" examined by Dr. Shah for his abdominal problems, and plaintiff's medical records reveal that Dr. Shah examined plaintiff on June 3, 2009. Pl's Opp. to Def.'s Mot. for Summ. J. and Additions to Compl. 10; Pl's Reply Mem. in Supp. of Def.'s Mot. for Summ. J., Ex. 1. At that examination, Dr. Shah recommended that plaintiff increase his fiber, fruit and vegetable, and water intake and avoid refined foods. Pl's Reply Mem. Supp. Def.'s Mot. for Summ. J., Ex. 1.

While Dr. Shah could not locate the cause of plaintiff's abdominal discomfort, Shah notes that plaintiff has admitted in his filings to "self-medicating." Specifically,

> [p]laintiff is still taking 18 Ibuprofen daily, along with 12 Tylenol and 10 Naproxen. The Plaintiff has started his own medical treatment, as the pain has become unbearable. Plaintiff takes 8 ounces of oil, drinks 32 ounces of very hot water, and takes half a bottle of Milk of Magnesia all at one time. After a half an hour, he then drinks three cans of apple juice and two cans of orange juice.

Mem. Supp. Pl.'s Req. for Inj. Relief 10. Plaintiff and Dr. Shah agree that Dr. Shah has recommended against this practice. Pl.'s Opp. to Def.'s Mot. for Summ. J. and Additions to Compl. 12.

On May 27, 2008, plaintiff presented to medical complaining of intermittent blindness. Def. Ex. 2 at 150. Medical officials suspected a blockage in his arteries, and a carotid duplex scan was performed on December 11, 2008. Shah Aff. ¶ 25-26; Pl.'s Opp. to Def.'s Mot. for Summ. J. and Additions to Compl. 10; Def. Mem. Supp. Summ. J. Ex. 2 at 57-60. The scan revealed an 89-99% blockage of plaintiff's right coronary artery and a total blockage in his left vertebral artery. Shah Aff. ¶ 26. Dr. Shah recommended that plaintiff take Plavix, a blood thinner, but the Bureau of Prisons disapproved and plaintiff instead received aspirin, also a blood thinner. Shah Aff. ¶¶ 28, 30. Based on the test results, Dr. Shah spoke with an outside surgeon about the possibility of surgery. Shah Aff. ¶ 26. However, the next day, plaintiff denied having

actual blindness spells and attributed his blurry vision to excessive tearing. Pl.'s Mot. in Resp. to Def.'s Br. and Interrogs. 27; Shah Aff. ¶ 27. Furthermore, plaintiff's medical records show that plaintiff refused surgery to correct this condition, Def. Ex. 2 at 55, although plaintiff denies that he ever refused carotid stenosis treatment. Pl.'s Mot. in Resp. to Def.'s Br. and Interrogs. 29. Based on plaintiff's representations, the surgeon determined that the need for surgery was no longer an emergency. Shah Aff. ¶ 27.

## IV. Standard of Review

In reviewing defendant's Motion for Summary Judgment, the Court must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is properly made and supported . . ., an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson, 477 U.S. at 247-48)

(internal quotation marks omitted). Accordingly, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

## V. Analysis

Summary judgment in favor of defendant Shah is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that Shah did not violate plaintiff's Eighth Amendment rights. It is well-settled that prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To have such a claim rise to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. Thus, plaintiff must first demonstrate a sufficiently serious medical need. A serious medical need either is a "condition of urgency, one that may produce death, degeneration, or extreme pain," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994), or arises if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998) (internal citation omitted); see, e.g., Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, plaintiff must show deliberate indifference to that serious medical need; mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. Additionally, a prisoner's

7

disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

Plaintiff alleges that defendant Shah refused to provide plaintiff with any medical care. To the contrary, as the exhibits and affidavits demonstrate, defendant Shah provided plaintiff with extensive medical care for multiple illnesses and conditions. Among other things, Shah submitted a 294-page binder documenting plaintiff's medical history while incarcerated, including a surgery, x-rays, cat scans, blood work, visits with specialists, and countless consultations. Def. Mem. Supp. Summ. J. Ex. 2. Even if plaintiff's unsworn responses were to be taken as true, they would still fall short of creating a genuine issue of material fact. The record indicates that Shah was well aware of plaintiff's medical conditions and provided plaintiff with a wide variety of necessary care. As the exhibits plainly contradict plaintiff's unsworn statements, there is no genuine issue of material fact regarding whether Shah provided plaintiff with medical care. Carter, 33 F.3d at 461-62.

Plaintiff primary complaint is that he suffers from chronic sinusitis and excessive tearing, and that defendant Shah has not treated these conditions at all. As a preliminary matter, plaintiff's condition fails to meet the requirements of a serious medical need. Several courts have held that conditions akin to plaintiff's are not sufficiently serious medical needs for purposes of § 1983 or Bivens relief. See Kemp v. Wright, 2005 WL 893571 at *6-7 (E.D.N.Y. Apr. 19, 2005) (chronic sinusitis is not a sufficiently serious medical condition); see also Simpson v. Prison Health Services, Inc., 2010 WL 425159 at *3 (W.D. Mich. Jan. 27, 2010) (nasal dryness, sinusitis, and chronic sore throat not "conditions that threaten serious harm or death"). But see DeMartino v. Zenk, 2009 WL 2611308 at *9 (E.D.N.Y. Aug. 25, 2009) (plaintiff's upper

respiratory infection, sinusitis, gastroesophageal reflux disease ("GERD"), bronchitis, nasal and sinus polyps, hiatal hernia and reflux esophagitis were sufficiently serious to satisfy the objective component of the Eighth Amendment).

Moreover, even if plaintiff's condition were sufficiently serious, taking plaintiff's unsworn statements as true, the facts show that Shah was not deliberately indifferent to plaintiff's medical needs. Shah was well aware of plaintiff's condition. She states that his nasal drainage is caused by previous eye surgeries designed to redirect the flow of excess tears through the nose, instead of over plaintiff's eyelids. Shah Aff. ¶ 2. Considering plaintiff's medical history, previous surgeries, and the cause of the nasal drainage, medical providers have determined that the surgery plaintiff feels he needs is not necessary. Def. Mem. Supp. Summ. J. Ex. 2 at 66, 137. Apart from surgery, plaintiff's sinusitis has been treated through other means. Specifically, plaintiff has been prescribed an antibiotic, Flunisolide, and Triamcinolone, and he has been referred to an ear, nose, and throat specialist. Def. Mem. Supp. Summ. J. Ex. 2 at 164; Shah Aff. ¶ 10. Plaintiff's excessive tearing has been addressed as well; upon arrival at FCI-Petersburg, he met with an ophthalmologist, who informed Shah that surgery could be done, but that it would be considered elective and, as such, would not be approved by the Bureau of Prisons. Shah Aff. ¶ 13-14. Thus, while plaintiff may not have been entirely satisfied with the efficacy of the treatment he received, it is clear from the record that plaintiff's condition has not been ignored. As Shah has not shown deliberate indifference, and as plaintiff merely disagrees with the medical decisions of his providers, no violation of plaintiff's Eighth Amendment rights has occurred. Def. Mem. Supp. Summ. J. Ex. 2 at 66, 137.

Plaintiff also alleges that Shah failed to properly treat his headaches and his neck, shoulder, hip and knee problems resulting from a fall at the correctional center. The record and

exhibits demonstrate that there is no genuine issue of material fact regarding plaintiff's claim. First, plaintiff has failed to demonstrate that these problems are sufficiently serious to constitute a serious medical need. Plaintiff himself admitted that he can "live with" these problems, which indicates that they are not akin in seriousness or in pain to an untreated broken arm. Mem. Supp. Petr.'s Charge of Deliberate Indifference 4; see Loe, 582 F.2d at 1296. Second, even if the problems did constitute serious medical conditions, the record indicates that the problems were treated, if not by defendant Shah, by another medical provider. Following the fall at FCI-Bunter, plaintiff was treated on February 27, 2007 by a staff physician and x-rays were ordered, plaintiff was instructed to take Motrin for pain, and plaintiff's arm was immobilized in a sling. Def. Mem. Supp. Summ. J. Ex. 2 at 89. Plaintiff was seen on January 15, 2008, at FCI-Bunter complaining of shoulder pain, and the examining doctor recommended physical therapy. Def. Mem. Supp. Summ. J. Ex. 2 at 255. After plaintiff's transfer to FCI-Petersburg, defendant Shah states that on February 13, 2008, plaintiff came to her complaining of a headache that he had experienced since the fall, and Dr. Shah recommended that plaintiff take Tylenol. Shah Aff. ¶ 9. Plaintiff was also seen on October 23, 2008, complaining of shoulder, hip, knee, and neck pains. Def. Mem. Supp. Summ. J. Ex. 2 at 25. Thus, plaintiff's statements that he has received "no treatment" for these injuries are clearly inaccurate, and under the most favorable reading to plaintiff, plaintiff has suffered no deprivation of his constitutional right to reasonable medical treatment.

Plaintiff next alleges that he suffers from abdominal pain, swelling, and constipation, and he states that he has not been treated for this condition. Contrary to this allegation, plaintiff's own filings, Shah's filings, and plaintiff's medical records demonstrate that he has been examined by at least two medical providers at different times, including Dr. Shah, who ordered a scan of his abdomen. Pl.'s Opp. to Def.'s Mot. for Summ. J. and Additions to Compl. 10; Def.'s

Mem. in Opp'n to Mot. for Emergency Injunction Ex. 2 at 6; Shah Aff. ¶¶ 40-41. The scan revealed no significant cause of plaintiff's pain, and as plaintiff admits, Shah referred him to a surgeon for follow-up care, who later prescribed plaintiff a nerve blocker to alleviate his pain. Pl.'s Mot. in Resp. to Def.'s Br. and Interrogs. 17-18. Shah suggests that plaintiff's discomfort might be due to his admitted self-medication daily regime of 18 Ibuprofen, 12 Tylenol, 10 Naproxen, 8 ounces of oil, 32 ounces of very hot water, half a bottle of Milk of Magnesia, three cans of apple juice, and two cans of orange juice. Mem. Supp. Pl.'s Req. for Inj. Relief at 10; Def.'s Reply Mem. Supp. Summ. J. 5. As Shah has advised plaintiff against taking medicines in quantities greater than the normal dose, and as Shah has nonetheless examined and treated plaintiff for this condition, the facts clearly demonstrate that plaintiff's Eighth Amendment rights were not violated.

Plaintiff's most serious medical condition appears to be his carotid stenosis, which can cause strokes. The facts show that Shah and other medical providers have repeatedly addressed this condition by ordering scans, referring plaintiff to specialists, and prescribing medications. Def. Mem. Supp. Summ. J. Ex. 2 at 55; Shah Aff. ¶¶ 27-32. However, plaintiff's medical records show that he has refused the surgery recommended by doctors for this condition, despite his statement to the contrary.[3] Def. Mem. Supp. Summ. J. Ex. 2 at 55. As the only clearly serious medical condition from which plaintiff suffers, Hathaway, 37 F.3d at 66, plaintiff's carotid stenosis would have been properly treated had plaintiff accepted the recommended surgery. Thus, defendant Shah did not demonstrate deliberate indifference to plaintiff's serious medical

---

[3] In this situation, the version of the facts supported by the record prevails. See Scott, 550 U.S. at 380 ("[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

needs, plaintiff received reasonable medical care from defendant Shah and other providers, and at no time were plaintiff's Eighth Amendment rights violated.

## VI. Conclusion

For the reasons stated above, plaintiff's Motions will be denied as moot, and defendant's Motion for Summary Judgment will be granted. An appropriate order shall issue.

Entered this 17th day of March 2010.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge